We are here for three cases today. Judge Choflat and I are again happy to welcome our virtual colleague Judge Ed Carnes. When I call the cases, please be aware of the lighting system. But of course, if a member of the court is asking a question, you can feel free to finish before you wrap up. With that, we'll start with our first case, Mr. Bashir in the United States. Thank you, and may it please the court. Good morning, your honors and counsel. A vessel is subject to the jurisdiction of the United States under subsection C1C of the MDLEA if two conditions are met. First, a vessel is registered in a foreign nation, and number two, if that nation in which the vessel is registered has provided a waiver or consent to enforcement of jurisdiction. And here, the issue is that both conditions were not met when jurisdiction was established. And I'd like to turn straight to the text and to the heart of this issue, which I think turns on the timing of what consent was provided and the actual text of what subsection C1C provides. So subsection C1C is a conditional statement, and there's two conditional statements that provide it, subsection C and subsection E. So for comparative purposes, I think looking at both and how the text of the MDLEA is worded is a helpful guide in distinguishing this between an argument that timing or consent was provided belatedly versus consent was provided not in conformity with the text of the MDLEA. The if-then statement under subsection C1C, if you just express that out in formal logic terms, if you will, or as any conditional statement, the if-clause is if consent or a waiver of jurisdiction is provided, the necessary clause, then it follows that a vessel is registered in that foreign nation. And here, it's undisputed on the record that when consent was provided, the vessel was not registered in a foreign nation. Cameroon had, in fact, deleted its registry. But wasn't the vessel registered at the time that the conduct occurred? Yes, Your Honor, and this is where it gets really tricky, and I do want to make sure that I'm being very technical and clear because the key here is jurisdiction must be established at the time of interdiction, and the vessel was registered at that time, but consent was not provided. What authorities do you have that say that the entire shebang must be present at the time of interdiction, right? Because Cameroon gave consent for the officers to board the boat, right? Yes, and I think the way that I would answer that question, because I think Your Honor is right, there's not expressed case law that says exactly when jurisdiction, the case law I think is pretty amorphous when it comes to the MDLEA, jurisdiction just needs to be an argument that is based on the text, and if we just look at it logically and by analogy. So I'll just try to answer the question in both contexts. If you look at a vessel without nationality, for example, that's a vessel that is not flying a flag or under the Nunez case doesn't have indicia of nationality. If it were the case that you could just establish jurisdiction after the date of the indictment or after the date of the interdiction, then by that logic, in every case a vessel that was flagged or a vessel that was subject to another nation's jurisdiction, all you would need to do is just revoke jurisdiction or registry and the vessel would become a vessel without nationality. I mean, but when you say all you need to do, it's not as if the United States has control of whether a foreign nation delists a vessel, right? So I'm not sure that all you need to do is maybe the right way to phrase that. Well, I think maybe the other, and probably textually, if you look at subsection E, which is the other conditional statement, that says a vessel in the territorial waters of another nation if the nation consents. So again, even if we look at subsection C or subsection E, so hypothetically here, had Cameroon instead of revoking jurisdiction or deleting jurisdiction passed registry over to Ghana, for example, just looking at another African nation, I think we would all be in agreement the United States would be going to Ghana to ask for consent or waiver because now the vessel is registered in that nation. So textually, and the same thing goes for territorial waters. If a vessel was in Venezuela, Venezuela passes it off to Ecuador, we would be asking Ecuador for consent or waiver. And that's just a basic principle of the if-then conditional. So here, the issue is Cameroon, and I think Judge Grant, you're absolutely right, it is subject to what, it's not within the United States' control, it's within Cameroon's control. So here the quirk, and I really have searched far and high and dry, not to use a pun, but just to make the point, it is, it's difficult to find a case in which we have this factual scenario in which a nation deletes registry because it's just uncommon to do so. And the deleting of registry is a distinct concept from granting another nation to enforce its laws. You can deny a nation from flying your flag or saying this vessel can no longer fly the flag of individuals. Deleting the actual registry is a decision that Cameroon made. I do think I can give the court comfort in knowing that this is a very unique factual scenario. So because of the way the MDLEA is written and because of the quirk of the deletion of registry, future cases really are not going to be impacted by this because in 99% of these cases, you'll either have factual findings in the court below in which the consent is established not just by the certificate of the Secretary of State, but by other actions. Here our record shows the United States understood consent was not provided. They repeatedly asked for consent. And rather than provide consent, what was provided was this deletion of registry. I guess the jurisdiction, we're looking for jurisdiction to do what? Because the United States did get consent, as we said, to board the vessel. And then there was some interregnum, right? And Cameroon delisted. And then ultimately Cameroon gave consent, right, at a later date. So what are we looking for? When does the United States need consent for what? And I see my time is up, if I can answer your question. Because I think there's two very important points I want to make here. Because this is also a point of contention, I think, between the parties. I think your Honor is, once again, correct. Jurisdiction in the case law establishes this. It's really akin to the matter and controversy, but it's in the statute to provide for international comity, to avoid the United States intruding on the jurisdiction or the primacy of another nation from enforcing its laws against its citizens or otherwise. That's why the deletion is actually meaningful here. Because what Cameroon does by deleting the flag is an imperfect analogy, but one way to think about it is it's akin to abandoning your property in the Fourth Amendment context. Once you put it out onto the sidewalk here on the bottom of the ocean or deleting registry, Cameroon is effectively trying to have its cake and eat it too. It's saying, well, we don't want anything to do with this vessel anymore. We're deleting registry. But we're also going to say, you United States, who on a foreign vessel that's now, we don't want to do anything with this vessel. We're going to delete it from our registry. Now we're going to come back and say, you can enforce your jurisdiction. I think we've got your argument. Thank you. Yeah, thank you. Mr. Chalela for Mr. Hurtado. I hope I'm pronouncing that correctly. Good morning, Your Honors. Good morning. Before the trial court, when the argument was first made at a status conference, that when Cameroon unregistered the Zumaque tracer, it caused on August 30th and August 31st, the Zumaque tracer to become a flagless vessel. I had maybe 45 minutes of time to try to wrap my head around that argument. I just can't see how, if we read the law in its plain language, that could possibly be an argument that holds water in this context. They would have, that argument to be cogent would have to go back in time on August 30th and turn what was clearly a flagged vessel and clearly a registered vessel and turn it into a back-in-time machine, turn it into a flagless vessel. The other thing that is disingenuous about that is the United States then, after having and not getting, getting acknowledgment from Cameroon that they got the request, they received the request, but Cameroon's not saying that we're waiving jurisdiction. They've had two cracks at it after the fact. Cameroon is affirmatively saying something. They're saying, yes, we have received your request for waiver of jurisdiction, but we're not, they don't give it. After the United States, with its very powerful place in the world internationally, power-wise, once the United States government lets Cameroon know, hey, these guys had a ton of cocaine on board, and we all know that where it was coming, it was going to be coming to the United States, and we can't be having this business, by the way, with your flag flying on the vessel. So then they delete from the registry the Zumake Tracer. Logically, it doesn't even make sense. There's nothing left to delete. The Zumake Tracer was on the bottom of the list, and it may seem like not an important point, but I think it really is when using lenity and the interpretation of statutes and being read in their plain meaning. A vessel is a ship in this context, and the ship is something that floats on the water and transports across the ocean. At the point where Cameroon deletes the Zumake Tracer from this registry, there's nothing left to delete. It's not a ship anymore. It's a huge hunk of metal on the bottom of the ocean. The logical inconsistency with the government's argument is that, okay, even assuming arguendo, their argument that when it was taken off the registry, it became stateless, and then if we go back in time in the time machine and change those facts to August 30th, August 31st, that now it's a stateless vessel, and so therefore we have jurisdiction because it's a flagless vessel. Even assuming arguendo, that questionable argument, the United States then goes forward and says, holy cow, we have, after all, we've gotten an oral confirmation, and now we're not on August 30th anymore. We're not even on August 12th anymore, when they first made contact with the Zumake Tracer. But we're all the way, fast forward 53 days later, or 50 days later, on October 18th. On October 18th, and your honors will recall, on September 19th, the United States Coast Guard makes a second request, and Cameroon does acknowledge the second request and still does not grant jurisdiction. But in any event, even assuming arguendo, the questionable argument that we can go back in time in the time machine and change this into a stateless vessel, now the United States puts, they finally get, the United States Coast Guard finally gets what they've been out in the ocean floating around for weeks now. They finally get a solid, bird in the hand excuse for what they claim is authority to be able to prosecute these guys. In our country. And that is that now, six weeks later, Cameroon, or seven, maybe eight weeks later, seven to eight weeks later, Cameroon actually gives an oral waiver of jurisdiction. And so that coincides, and who knows who's on the phone, who's making phone calls, the international power. But for some reason, now that we've gotten, for the U.S. Coast Guard, six to seven weeks later, we got this bird in the hand, which is, we orally, on August, I mean, excuse me, on October 21st, this is 53 days into the detentions. On October 21st, finally, Cameroon orally agrees to waive its jurisdiction. And coinciding with this, all the moving parts, we have, on October 21st, we also have a magistrate in Tampa who sees these fellas at first appearance slash arraignment for that indictment that was filed on October 16th. This is after three days earlier, before even the oral jurisdiction was given. Three days earlier, they get the fellas down in Puerto Rico, and- Thank you, Mr. Chalala. Your time's up. Mr. Grandy for the United States. Good morning, Your Honors. May it please the Court, Todd Grandy appearing on behalf of the United States of America. In this case, there are two separate but complementary vehicles for subject matter jurisdiction, and that is consent, because Cameroon did consent to the United States' exercise of jurisdiction in this case. But even before that, Cameroon deleted the defendant's vessel from its vessel registry, which made the vessel stateless and also conferred jurisdiction on the United States. So here, we have not one but two separate vehicles for jurisdiction consent. Well, deletion of the vessel registry on September 18th, which we learned about on October 12th, and then consent, verbal consent, which occurred on November 21st, which is followed by formal consent on November 24th. So two separate vehicles, as far as when it doesn't really matter, but the vessel actually sunk on September 5th, 2019, after the defendants were removed from the vessel and its pumps were no longer being refueled. Also, this Court in United States v. Hernandez, which we've cited in our brief at pages 23 through 24, made clear that the U.S. may satisfy the statutory requirements for jurisdiction after the defendants committed their offenses. And so here, at the earliest, we had the vessel became stateless on 9-18, and of course, they were indicted on October 16th and brought to Tampa on the 18th, and then they had their initials the following Monday on the 21st. So here, we have not one but two separate vehicles, either one of which would be more than adequate to confer jurisdiction on the United States. Your Honor, it seems to me that this is just a thought. The fundamental policy enforced by this statutory arrangement is comedy between nations. We're worried about offending another nation. They're worried about offending us. Yes, Your Honor, absolutely. And so what it seems to me like is when things happen and so forth in a case, who talks to whom and when these things happen are sort of prophylactics. The argument is on their side, you have to dot every T, I, across all the T's, exactly the way it's written. Otherwise, that is a prophylactic which protects this comedy arrangement. Is that sort of where we are? I believe it is, Your Honor. And here, we did dot all the I's and cross the T's. We have a Secretary of State certification which conclusively establishes Cameron's... Well, I think they would probably concede the point, I don't want to say they would, but that there's no comedy problem here. No, Your Honor. No, in fact, I think we went above and beyond to ensure that Cameron's consent and by taking advantage of when Cameron deleted the vessel from his vessel registry after learning that the defendants had been involved in the maritime drug trade. But yes, at the end of the day, the whole point of the statutory scheme is comedy between nations. But we would submit that here, those interests had been more than accounted for so that Cameron would certainly be able to weigh in any way they would deem appropriate. In fact, they did. Apart from that... What if we concluded... And I'm not saying that we will, so you don't need to argue that we shouldn't. But what if we concluded that there is no jurisdiction until Cameron orally consented? Would there still be... Would there be something in the middle there that the United States did that it didn't have jurisdiction to do or not? What would seem to me doing that would afford no significance to Cameron's decision to delete their vessel from its vessel registry, which they did on September 18th. I'm just saying, what if we did afford no significance to that? I'm not saying that's the path we'll take, but I'm curious what your response would be if we don't think it's relevant that Cameron delisted. Well, then we have consent that is conclusively established by virtue of the Secretary of State certification in this case, which no one has challenged. No one has argued otherwise. Right. I guess that's the question. Is that enough for whatever happened in the interim between consent to board the boat and then the later consent that you got for the... I believe so, Your Honor. I mean, because we got initial consent on August 21st to stop, board, and search the vessel. And then we subsequently submitted requests on September 3rd and September 19th requesting that Cameron grant us jurisdiction, consent to our exercise or waive objection to our exercise of jurisdiction. And Cameron ultimately agreed to do so on October 21st and then reiterated that decision three days later on October 24th. So here, I think consent without more would be more than adequate. So I guess you all held them at sea for some period of time and then went to Puerto Rico and then Tampa, and then there was an indictment, and then Cameron consented. Yes. Yes. Yes. The indictment was on October 16th. They arrived in Tampa on Friday, October 18th, and they had their initials on Monday, October 21st. Counsel, is it undisputed that consent applies retroactively? Yes, Your Honor. Based on the United States versus Hernandez. We, it's a statute. I'm sorry, Your Honor. Isn't that the end of the discussion? That leaves only the issue of whether consent that comes after a delisting applies retroactively or is effectively valid and applies retroactively. Isn't that the issue? Well, that, what is, but what's interesting about that issue, Your Honor, is that by saying that the vessel's already been delisted, I mean, you've established jurisdiction. So even if there were some infirmity in Cameron's consent, by that point, the vessel had been removed from its registry, which conferred jurisdiction on us. So either, either way, the end result would be the United States subject matter jurisdiction in this case is perfectly fine. Is there a decision that delisting, the effect of delisting applies retroactively? Can be used to bless the seizure that occurred before the delisting? I think the closest I have to that would be, again, Hernandez, which this court held that the United States may satisfy the statutory requirements for meddling in jurisdiction after the defendants committed their maritime drug trafficking offense. So I think that's, that's probably the best case I have on that point. Okay. And I'm, I, I, you, my normal practice is to only address the issues that have been raised by the appellants. So unless this court has any further questions, I would be inclined to stop where I am. Thank you. Thank you, Your Honor. Mr. Basher. Thank you, Your Honors. In just the brief minute I have, I just want to make two points. Judge Carnes, I think you do have hit exactly on what the issue is and why the deletion itself is retroactive. There's the authority for why that is not so, I think comes in two parts. One, here Cameroon retroactively delisted only to September 18th or 19th, depending on the record, which is a month past the date of the indictment. That's number one. And number two, I don't even think you necessarily need to reach that issue. We probably can leave that open for another day if it was, the deletion was retroactive back to, you know, let's say July 30th, then we perhaps would be talking about a stateless vessel. But the second point, my last 10 seconds, is jurisdiction here below was established exclusively on C1C and not under the lack of nationality. So again, I think this court can leave open that question of whether lack of nationality could be an alternative basis, but here under C1C. So thank you. Thank you. Mr. Chalala, one minute. Thank you, Your Honor. So the logical inconsistency of the first argument that going back in time it became stateless, that question of a logical argument is inconsistent then with the United States saying that Cameroon then on October 21st orally consents to to waive jurisdiction because there's nothing to waive since it was stateless, said their argument. As to the inadvertent maybe problem of deregistering the vessel on September 18th is, as Mr. Bashir pointed out, it's as if they abandoned their property rights to the vessel on September 18th. And so they can't, they don't have any quo warranto, they don't have any authority to be able to waive jurisdiction on October 21st or October 24th because they deregistered it and lost all property rights over the vessel. Thanks very much. Your time's up. We've got your case. Thank you, counsel.